[L.A. No. 31713. Oct. 20, 1983.]

RICHARD PHILIP TRAUB, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION,
Defendant and Respondent.

794

**Counsel**

Rose, Klein & Marias, Marvin N. Shapiro, David A. Rosen and Eugene Marias for Plaintiff and Appellant.

Allan S. Ghitterman as Amicus Curiae on behalf of Plaintiff and Appellant.

John H. Larson, County Counsel, and Owen L. Gallagher, Deputy County Counsel, for Defendant and Respondent.

**Opinion**

**GRODIN, J.**—In this appeal from denial of a writ of mandate, plaintiff seeks to compel the Board of Retirement of the Los Angeles County Employees Retirement Association (Board or Retirement Board) to grant him a retirement allowance for service-connected disability. The trial court found that he was psychiatrically incapacitated for work because of stress resulting from the county's unsuccessful attempt to dismiss him for dealing in illegal drugs, but concluded that the incapacity was not service-connected because it did not "aris[e] out of and in the course of his employment" as required by Government Code section 31720.[1] The issue is whether dis-

---

[1] All statutory references are to the Government Code unless otherwise indicated.

When plaintiff applied for disability retirement on October 18, 1977, section 31720 provided in pertinent part: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: (a) His incapacity is a result of injury or disease arising out of and in the course of his employment."

A 1980 amendment adds the requirement that the "employment [have contributed] substantially to such incapacity" but provides that the amendment "shall be applicable to all applicants for disability retirement on or after the effective date of [the amendment]," i.e., January 1, 1981. (§ 31720.)

ability from an employer's investigation of, and dismissal for, employee wrongdoing is service-connected when (1) proof of the charges would establish misconduct outside the scope of employment but (2) the charges are not proved and the dismissal is set aside.

We conclude that psychiatric injury resulting from an employer's investigation of ultimately unproved charges against an employee arises out of and in the course of the employment whether or not the alleged misconduct was within the scope of employment. Accordingly, we reverse.

### Factual and Procedural Background

In 1963 plaintiff began work for Los Angeles County as a deputy probation officer and became a member of the retirement system administered by the defendant Board. He supervised youth offenders and in 1969 was assigned to the after-care unit, working with boys who were on probation after release from camp.

In June 1974 he received a call from a former camp inmate whom he had counseled nine years earlier. The young man visited plaintiff at his office during the lunch hour and phoned again a few days later. During those conversations there was discussion of drugs, but plaintiff claims he pursued that topic simply to keep open the possibility of assisting the young man with personal problems.

In July 1974 plaintiff heard from fellow staff members that there was a tape recording of someone in the office arranging a drug sale. He went to his supervisor with notes of his conversations with the young man about drug traffic, but the supervisor said he need not turn in his notes since the matter would be dropped. In August, however, he was summoned by the supervisors, interrogated, and required to take polygraph tests.

On November 25, 1974, plaintiff was dismissed for negotiating a sale of drugs to a federal enforcement agent. He was told that the polygraph test did not absolve him and learned also that the young man with whom he had talked had committed suicide.

There ensued a lengthy review of the dismissal. A referee heard evidence and in September 1975 upheld plaintiff's termination. The civil service commission refused to disturb that decision, but in September 1976 the superior court ordered the commission to rehear the matter. In October 1976 the commission ordered plaintiff reinstated with back pay. After further administrative review, plaintiff returned to work in December 1976.

On reinstatement, plaintiff asked to be assigned to his former duties but instead was directed to work with adult heroin addicts. He was unable to adjust to the job, took vacation time, and did not return to county employment.

In October 1977 plaintiff applied for a service-connected disability pension, claiming psychiatric disability. The Board determined that plaintiff was disabled but granted only the lesser retirement allowance for disability that is not service-connected. An evidentiary hearing to review the Board's decision was held in April 1979 before a referee, who in June 1979 recommended that the Board adhere to its original decision. The Board adopted that recommendation in August 1979 and in September 1980 plaintiff commenced the present mandate proceeding.

The trial court entered judgment against plaintiff in December 1980. ■ The court properly undertook to base its findings on its independent judgment of the weight of the evidence in the administrative record. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29].) The court found that as a result of plaintiff's dismissal in November 1974, he "became very upset, anxious, angry, and depressed from the time the investigation began and more severely so after he was fired," that he had been "medically diagnosed as 'chronic severe traumatic depressive neurosis with phobic and obsessive features, reactive to the stress of being unfairly dismissed from work and having to be reinstated,'" and that he "is permanently disabled from duty due to a psychiatric condition." But the court also found that "[t]he stress suffered by [plaintiff] arose out of the termination, not from the job activities," and that his "incapacity is not a result of injury or disease arising out of and in the course of his employment within the meaning of Government Code Section 31720." The court concluded that plaintiff "is not entitled to a service-connected disability retirement allowance."

*Discussion*

I.

Plaintiff contends that the required connection between disability and employment was conclusively established, under res judicata principles, by a decision of the Workers' Compensation Appeals Board (WCAB) in February 1979 awarding him benefits from the County of Los Angeles for "injury to his emotional state from Dec. 10, 1972 through Dec. 10, 1976." A copy of the award was submitted to the trial court, and at least two of the three psychiatrists who prepared the medical reports considered by the court ap-

pear to have based their conclusions on their examinations of plaintiff in connection with the workers' compensation claim.

■ Under the collateral estoppel aspect of res judicata, the litigation and determination of an issue by final judgment is conclusive upon the parties or their privies in a subsequent suit on a different cause of action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892]; *Jackson* v. *City of Sacramento* (1981) 117 Cal.App.3d 596, 601 [172 Cal.Rptr. 826].) ■ A final determination by the WCAB is a final judgment for collateral estoppel purposes. (*French* v. *Rishell* (1953) 40 Cal.2d 477 [254 P.2d 26]; *Dakins* v. *Board of Pension Comrs.* (1982) 134 Cal.App.3d 374 [184 Cal.Rptr. 576].) ■ It is unnecessary for us to decide whether a determination of compensability necessarily implies that the injury would qualify as the basis for service-connected disability retirement benefits under section 31720 (fn. 1, *ante*) because *the requisite privity between the county, against which the award was made, and the county Retirement Board, appears to be lacking.*

In *French* v. *Rishell, supra,* we found the requisite privity between the City of Oakland and its Board of Trustees of the Firemen's Relief and Pension Fund since, under that city's charter, "the pension board acts as an agent of the city, and, in this representative capacity, it is bound by the [Industrial Accident] [C]ommission's decision if the city is bound." (40 Cal.2d at p. 482.) A county retirement board, by contrast, does not act as agent for the county, but as administrator of the county retirement system, an independent entity established pursuant to the County Employees Retirement Law of 1937. (§ 31450 et seq.) The constituency of that entity is not limited to county employees, but may include employees of various political subdivisions and districts within the county.[2] Funding for the system comes both from the governmental employers and from the employees on an actuarial basis, so that any adjudication of a claim for benefits may have *economic impact upon the membership of the association* as well as upon the treasury of the county and participating political entities. (§§ 31453-31454.6.) The Courts of Appeal have consistently held that a county retirement board is not bound by adjudication of a workers' compensation claim

---

[2]Section 31557 provides that officers and employees of any "district" may become members of the retirement association, upon approval by the board of supervisors and (in the case of districts for which the board of supervisors is not the governing body) the governing body of the district. The term "district" is defined in section 31468 to include (for example) "(a) . . . a district, formed under the laws of the state, located wholly or partially within the county other than a school district. (b) . . . any institution operated by two or more counties, in one of which there has been adopted an ordinance placing this chapter in operation. . . . (e) . . . any city, public authority, public agency, and any other political subdivision or public corporation formed or created under the Constitution or laws of this state and located or having jurisdiction wholly or partially within the county."

against the county because the privity requisite to application of collateral estoppel principles does not exist. (*Grant* v. *Board of Retirement* (1967) 253 Cal.App.2d 1020, 1021 [61 Cal.Rptr. 791]; *Petry* v. *Board of Retirement* (1969) 273 Cal.App.2d 124, 129 [77 Cal.Rptr. 891]; *Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128, 132 [139 Cal.Rptr. 814]; *Preciado* v. *County of Ventura* (1983) 143 Cal.App.3d 783 [192 Cal.Rptr. 253]; see also, *Flaherty* v. *Board of Retirement* (1961) 198 Cal.App.2d 397, 402-404 [18 Cal.Rptr. 256].) The distinctive identity, constituency and interests of a county retirement system support that rule, and we follow it here.[3]

## II.

■ Disability from emotional stress caused by psychological pressures imposed by an employer is ordinarily service-connected if based on the employer's dissatisfaction with the employee's job performance. (*Albertson's, Inc.* v. *Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 308 [182 Cal.Rptr. 304].) It is undisputed that plaintiff is disabled from working at his former job, and that his disability is due to stress arising out of the investigation of the charges against him, his purported termination, his subsequent efforts to obtain reinstatement, or some combination of these factors. ■ The trial court concluded, however, that his disability was not service-connected because the *charged conduct* consisted of illegal activity outside the scope of employment. We conclude that the trial court erred.

■ While illegal conduct in the performance of a job-related act will not preclude a finding that resulting disability is service-connected (*Williams* v. *Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 937 [116 Cal.Rptr. 607]), the present charges *if sustained* would have established illegal activity wholly unrelated to plaintiff's duties and thus outside the scope of his employment. And for purposes of analysis we assume, without deciding, that

---

[3]The California Applicants' Attorneys Association, as amicus curiae, argues that the Retirement Board's nonparticipation in the workers' compensation proceeding is of no consequence because the Board is a "forum" rather than a "party." This contention was recently considered and rejected by the Court of Appeal in *Preciado* v. *County of Ventura, supra,* 143 Cal.App.3d 783, 789, on the ground that it "overlooks the nature of administrative agencies. An administrative agency may have executive, administrative, investigative, legislative or adjudicative powers. They normally have and exercise some combination of all of these powers. [Citation.] [¶] The Association's board of retirement is an excellent example of the hybrid character of administrative agencies. . . . It is both the 'forum' and a 'party' in proceedings for disability retirement which it conducts. [¶] The Retirement Board was a party to the retirement proceedings but was not represented in the WCAB proceeding. Accordingly, the requirement of identity of parties has not been met and the doctrine of collateral estoppel does not apply."

had plaintiff been demonstrated to be guilty of those charges, and his termination upheld, he would not be entitled to a disability pension by reason of the resultant stress. ■■■ But the fact is that the charges were not proved,[4] the purported determination was overturned, and plaintiff was reinstated to his former job with back pay. To say that he should be barred from a disability pension because of *unsubstantiated* charges that he engaged in misconduct, whether within or outside the scope of his employment, seems to us wholly illogical, and contrary to applicable legal principles.

In *Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd.* (1980) 112 Cal.App.3d 241 [169 Cal.Rptr. 285], a salesman of telephone directory advertising claimed workers' compensation for emotional distress from investigation and discharge on allegations he had forged signatures on advertising contracts. The Court of Appeal held that his right to compensation depended on whether he "in fact engaged in the criminal activity of forgery," for if so, "his injury would not be a consequence of his employment but incidental to his criminal conduct." (*Id.*, at p. 247.) It declared, however, that the burden of proof was upon the employer to establish the employee's guilt and that all reasonable doubts were to be resolved in favor of the applicant. (*Ibid.*) The same Court of Appeal division held again in *Rockwell International* v. *Workers' Comp. Appeals Bd.* (1981) 120 Cal.App.3d 291 [175 Cal.Rptr. 219], that the right to workers' compensation turned on the truth of the charges underlying the discipline, which there involved an alleged attempt to conceal evidence that workers were drinking beer on the job.

The Retirement Board relies on *City of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 355 [174 Cal.Rptr. 25], in which a police officer was denied workers' compensation for emotional injury resulting from his employer's investigation of a report that he had made a death threat against his wife, irrespective of whether the accusation was true. Distinguishing its earlier decision in *Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd., supra,* 112 Cal.App.3d 241, the court stated: "In our view a police officer who is accused of criminal activity *which pertains to matters outside of his functioning as a police officer* is in no different a position from any private citizen accused of criminal activity. In the event such accusations should prove to be false, his rights should be no greater than any to which the ordinary private citizen is entitled since such accu-

---

[4]The parties have not supplied us with records of the civil service commission or court proceedings relating to plaintiff's dismissal. Consequently, we do not know for certain the basis on which the termination was overturned. The Board does not contend, however, that plaintiff's guilt was ultimately established in those proceedings or in the proceedings before the Board.

sation dealt not with his actions in the capacity of a police officer but in the capacity of a private citizen." (119 Cal.App.3d at p. 365, original italics.)

The Retirement Board argues that the principle of *City of Los Angeles* bars recovery here because (it contends) the charges of criminal conduct in that case, even though unsubstantiated, pertained to matters outside of the applicant's functioning as a city employee. But there the lack of nexus between the alleged conduct and the employment relationship was only one of two relevant factors, the other being the nature and function of the applicant's employer. It is the duty of a police department to investigate crime wherever it occurs, and a police officer under investigation for alleged criminal activity unrelated to his duties may stand, as the Court of Appeal concluded in the case before it, "in no different a position from any private citizen accused of criminal activity." Plaintiff here, by contrast, was subjected to an investigation, independent of law enforcement, focused upon the relationship between his asserted wrongdoing and his suitability for continued employment.[5]

We therefore conclude that when an employee is investigated and disciplined by the employer on charges of misconduct that are unproved and therefore presumably false, and the discipline set aside, the resulting psychological stress and injury arises out of and in the course of employment within the meaning of section 31720.

Plaintiff claimed below and now claims here that he is entitled to interest on retroactive service-connected disability retirement benefits (Civ. Code, § 3287) and to an attorney's fee (§ 800). Because the trial court erroneously concluded that plaintiff's disability is not service-connected, it had no occasion to rule on these claims. Plaintiff may renew them on remand.

---

[5]Even if some nexus between plaintiff's employment and the alleged misconduct were deemed necessary, it would appear to have existed here. An injury may arise out of an employment that brings the employee into a position of danger from the injurious force even though the employer had no connection with or control over that force and could not have foreseen the risk. (*California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 157, 160 [436 P.2d 67].) If plaintiff in fact did not illegally deal in drugs, the false accusation leading to the traumatic investigation and dismissal of him by his employer was attributable to his being approached and visited at his place of work by a man with whom he was acquainted only through having previously counseled him in the course of employment. Even though plaintiff's duties did not require him to advise or even talk to the former inmate nine years later, the nature and rehabilitative purpose of their prior employment-related dealings would naturally tend to contribute to plaintiff's desire to respond (as he did) to the former inmate's overtures in order to keep open the possibility of assisting him with personal problems.

The judgment is reversed.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.